argument then in the first case on the regular argument calendar. Uniformed Fire Officers Association v. de Blasio 22789 and 23177. Mr. Coles. Good morning your honor. Tony Coles for the appellants. We're more than 65,000 current and retired law enforcement officers. For the last four decades their disciplinary records were subject to a special protection against public disclosure that wasn't available to other city employees under 50A. Last year that special protection was repealed putting law enforcement disciplinary records on the same footing as other employees records. The repeal of nullify existing legal protections that were independent to 50A or make police officers or disciplinary records more available than other employees records under existing law. Now on this appeal we seek only to preserve the status quo for trial because the city is rushing to create online registries that will indiscriminately include tens of thousands of unsubstantiated, unproven and non-final allegations of only law enforcement officers and they're going to do that without any prior meaningful review of existing legal protections for those records. Now there are a number of issues that are raised in the briefing but first I want to address the finding that there was no irreparable harm to appellant safety and privacy because it's really on the minds of every officer and the facts and law on these harms have been developing in real time since our briefing. We submitted a rule 28 letter citing the Empire Center case from the appellate division in New York after this appeal was submitted. Empire Center held that the releasing of the names alone of retired police officers created a risk of violence to the officers and the appellate division barred the release of the names under FOIA. Now what's interesting and important about that case is the city submitted sworn affidavits from the Corporation Council and the senior NYPD intelligence official stating that releasing the names of retired officers on the internet will threaten their safety and risk exposing them to violent action and the court agreed. In the case before you today the risk is magnified. We have widely publicized registries that will be set up and the city's position in Empire Center should really devastate its position before this court that there is no risk to harm. To hear that they're actually seeking to trivialize what they said was dramatic in the Empire Center case and the record in the case below in the court below shows significant and other disturbing allegations that affect a reparable home. You see that in the Alejandro affidavit at 2361 of the record. Chilling threats made to officers at the time the bill was passed. Judge Kearse, do you have any questions? No I don't. Judge LaValle? No I would allow counsel to continue his argument. Okay. Thank you your honor. So you have the Alejandro affidavit. You look at the amici have brought to the attention efforts to harass and dox police officers around the state. I refer you to the New York State Police Association's amici at page 15 where they talked about Saratoga Judge Walden who retired in 2007 from the NYPD and in August 2020 unsubstantiated disciplinary allegations were published in a newspaper in the Albany area. Mr. Coles, I very much appreciate those concerns but as I understand it and officers have in New York had an opportunity in connection with the repeal of 50A to point out specific instances in support of possible harm of the type both on the privacy side and safety side. As I understand it there's nothing in the record that indicates that the unions were able to come up with anything. Is that right or is that wrong? No I think that's significantly wrong and I think that in fact if you look at the hearings in Albany what the sponsors of the bill said that the irreparable harm issues are already protected within FOIL and so it wasn't necessary to have 50A in order to the Empire Center case which is decided a year and a half after the repeal of 50A simply just corroborates and supports that finding. So look no one wants to exaggerate the risk, your honor, but you have to respect it and the Empire Center case I think in particular tells you there's a real risk as well as the record in the court below. There are also very significant substantive issues that I want to address in my time. We're seeking a preliminary injunction under Article 75 to prevent the city from nullifying CBA arbitrations that have already been commenced. Those arbitrations seek to enforce our collective bargaining right to unfounded and exonerated allegations removed from our personal folders. The city's creation of these massive public registries are obviously going to make that arbitration meaningless and empty Richard. I have a question about that. The Section 7C of the CBA provides for the removal from the personal folder of various documents that this is about, but as I understand it, the new situation doesn't change that. They'll still be removed from the personal folder and therefore the complaints on which an officer has been exonerated will not have any negative effect or indeed any effect on personnel decisions or things that would be influenced by what's in the personal folder, but the 7C right doesn't give the officer the right to have a documentary evidence of this nature removed from all of the city's files. It will be removed, if I understand it correctly, from the personal folder, but that doesn't mean it gets to be removed from everything. Your Honor, respectfully, my response to that would be that 7C gives the unions the right to remove those allegations from their personal folders and if in fact, despite the right to remove that, the city could broadcast those publicly, that right to remove and remove means to extinguish, to take away, is completely overwhelmed. It makes that right that we've argued for meaningless. It trivializes that negotiated right. In other words, the city's argument is, oh, you know, we can put it in folder number one and you can take it out of folder number one, but we can put it on the World Wide Web and we can put it in any other folder we want and your CBA right doesn't cover that. To me, that is an open question that should go to the arbitrator. The CBA has a very strong arbitration provision and the arbitrator ought to decide the meaning of contested terms like that. Certainly, the judge usurped the arbitrator's position in making that determination and let me just say on the balance of the equities and if the city's registries were set up well, you know, on the other side there would only be a short delay while the matter is arbitrated. So I think there's a strong likelihood of success in arbitration on 7c and the court actually decided the meaning of contested terms and resolved issues of the full record and that's what an arbitrator should do on due process. Mr. Coles, are you asking, I'm trying to understand, are you asking for or asserting that every record covered by the CBA needs to be withheld or are you It's actually a terrific question, Your Honor. We are asking essentially that unproven, unsubstantiated, non-final allegations, allegations that create a stigma and a burden on the officer should not be produced, but all of that needs to be subject to an individualized, particularized review. What the city is doing is essentially creating registries of vast swaths of documents without doing an individualized, particularized review. I think our view is... So even under the collective bargaining agreement, you're really asking for some form of individualized review as opposed to a block withholding of these records, is that right? Well, under the collective bargaining agreement, the unfounded, exonerated allegations are protected as matters of privacy. I'm sorry. Yes, Your Honor. No, you go ahead. I'm going to give you just a minute more and then we'll hear from your adversaries because you reserved three minutes to develop. Okay, thank you very much. I quickly want to talk about due process. It is the release of these unsubstantiated false allegations that are clearly susceptible of creating a false leg will affect my officers and their professional reputation and their professionalism and their integrity. The city is setting up registries where these unreviewed documents are going to go. Those registries are going to be available to employers, to landlords, to credit from expert testimony. And you already see that the effect on Judge Waldron in Saratoga and also in our amended complaint. As I said, these facts are coming out now because most of the documents haven't been released. Richard Taylor, a professor in St. John's, is essentially being hounded out of his job. We allege this in the amended complaint on the basis of unsubstantiated allegations. We'll hear from the city first, I believe, and Communities United for Police Reform. And you have three minutes for rebuttal, Mr. Coles, as I said. Thank you. I appreciate that, Your Honor. Thank you. Thank you, Your Honor. This is Alina Jerker on behalf of the city. Every one of the claims that the District Court correctly found after extensive briefing and argument, they didn't meet their burden for an injunction in aid of arbitration and they didn't meet their burden for an injunction under the traditional injunction factors for their other claims. You know, I mean, I'd like to first address the Section 7C claims. Those claims can't support an injunction for several reasons. And to be clear, the unions would have to overcome every single one of them independently to be able to prevail here. As the District Court correctly found, this language is clearly employment-focused. It focuses on removing information by the chief of personnel from the personnel folder, alternatively called the personnel folder, not from public records. And even if that, even if it had created some sort of a broader right, it still wouldn't reach the records issue here because the text provision only reaches investigative reports from closed investigations that result in an exonerated or unfounded investigation. But the NYPD only intends to release records...sorry, Your Honor? I think it's good that there's an echo, but that's maybe what you're hearing. Oh, sorry. So, the NYPD only intends to release the records from the substantiated investigation. So, by definition, because they're releasing records starting from the formal disciplinary process, not the pre-discipline investigative phase. So, Section C only speaks about investigative reports from cases that end up resolving in an officer's favor. But the NYPD's release here is only about documents from the formal disciplinary process, starting with the charges and specifications of formal charging and following over forward from there. So, there was absolutely zero overlap between what this CBA provision, even in its most broad reading, could possibly protect and what the unions are seeking to have enjoined from disclosure here. So, that claim utterly lacks merit. There's nothing to send to an arbitrator. Do I understand correctly? You are saying that the proposed actions by the city that are being objected to do not include any form of making public or releasing documentation with respect to complaints that were not substantiated? It is only the release of complaints that were substantiated? Is that correct? By NYPD, that's correct. So, the NYPD, there's affidavits in the record that explain what NYPD, who's the contracting party on the CBA and who's obviously the only person who can reach into the NYPD personnel folder by the NYPD chief of personnel. So, for NYPD, the disclosures are from the formal disciplinary process. The charges and specifications, the settlements of charges, and the final decisions after trial at the disciplinary hearing or at the disciplinary trial. So, there's zero overlap between that and the Section 7c provision. The records that CCRB has produced has already actually, in large part, produced 81,000 records that were produced by NYCLU in a previous iteration of an appeal before this court. Those records include things from the investigative space, but those are not NYPD, not just an independent agency. That's an agency made independent sort of by definition under the city charter and not meant to be controlled by NYPD. And if you'll let me briefly address Section 8, which is really what demonstrates that the NYPD, sorry, that the district court was extremely careful here and that Mr. Coles just said that the arbitrator's role here was usurped, but the district court was quite careful and deferred to the arbitrator and said that to the extent that there was a question about what CBA provision could potentially have any, carry any weight at all on their arguments, that the court would defer and grant a very limited injunction. And that limited injunction under Section 8 stands, and we didn't challenge it, it allows for the police commissioner to expunge the record of a case of a certain very small subset of something called a Schedule A violation, which is a technical infraction under the patrol guide, things like forgetting your memo book. So, under the patrol guide Section 206, there's a list of these factors, a list of these sort of, we'll call them technical infractions. If an officer then pleads not guilty to a charge against that and prevails at their trial, they have a right under the CBA to quote-unquote expunge the record of the case. The district court was really careful, considering, comparing that language in Section 8, the court said, you know, there could be a question here about what this provision means and I guess I just want to note that the intervener, Cross Appellant, has appealed that portion of the provision on the theory that it violates public policy, and that's incorrect. The CBA doesn't violate public policy. The CBA clearly wasn't void ab initiative because 50A was in effect at the time it was negotiated. It didn't become void when 50A was repealed because the legislature, in repealing 50A, added a new exemption available to the city for technical infractions. So exactly this type of thing that's covered within Section A, or Section of the CBA, sorry, of the Patrol Guide, is something that the city remains, has the authority to withhold from public record even after the repeal. So there is no problem with public policy there. I think it's important, and I can walk the court through if you have any questions about the other claims that the unions have raised, none of them has any merit. In fact, they all fail on multiple fronts as we outlined. Their FOIL claims fail because there's not even such a thing as a right to enforce FOIL, and in any event, right, I'm sorry, to enforce it by the person who's the subject of the record as opposed to the person requesting the record under the open records laws. But in any event, New York City's position here is entirely rational and consistent with the will of the people of public policy, and the need to treat officers differently is also consistent with the extraordinary authority. This is just Lillie, just so that I understand, what is the city's position with respect to the limited injunction, if it has one? I understand that you disagree with an argument advanced by CPR, sort of the broader argument, but of course it makes a couple different arguments. So what is the city's position? The city is complying with the preliminary injunction because the city intends and believes that we will prevail in arbitration on that provision. The Section 8 language is at least a closer call, and so we chose to avoid unnecessary delay in this appeal, unfortunately it wasn't avoided, to allow that portion to stand and to seek release in arbitration on that provision. So we have not appealed the injunction, and while we don't believe that the unions are correct in their construction of Section 8, we also are prepared not to release any matters that result in technical infractions. We're allowed to do that on this oil, so it's not a sort of a legal conflict for us in any sense, in terms of conflicts between public policy, and as I think the case has started to, there's some portions of the case suggested. In any event, I think you are understanding that there's just no merit here in any way. Chief Mears' case is utterly without merit, as is the cross appeal, and so this court should affirm, but we ask actually, even before you do so with the decision, vacate the stay. The city has been going for six months and complying with a legislative judgment that reflects the overwhelming will of the people, and it's an important step to be building trust in the police, and every single day there are requests made by the public for this information, and we continue to be under an injunction and unable to comply with it. It's difficult for this, it's a difficult position because the legislature has already made all of the judgments that the unions are now raising about weighing the remote possibility of harm and the speculative theories, and all these same arguments are raised in the legislative process. When you say, when you say, when you say vacate the stay, what is it specifically you're referring to? This court entered a stay, the motions panel stay, okay, the motion panel stay, yes I'm sorry, the motion panel stay currently enjoins the city from, even though we prevailed in the district court, we're unable at this point, and we've been unable since July 22nd. This has been slowly extended over time through these increments, so since July 22nd of last year, we've been unable to respond to FOIA requests and to actively participate in a national conversation about police reform at a really critical time in the conversation about police reform, and it's damaging, it's exactly the type of strong public interest that this court recognizes. Judge Keir, Judge Lobau? Any questions? None here. When I asked you earlier about Section 7C, and I asked you earlier about whether the city had an intention to release a document relating to complaints on which the officer had been exonerated, you answered no with respect to the police, but did that answer mean that the answer would have been yes if we were talking about firefighters or anybody else that's involved here other than the police? Oh no, your honor, I'm sorry for the confusion. The NYPD is a separate agency from the CCRB, so as for police officers, the only release by NYPD is from the formal disciplinary process. The release from the CCRB, which is an agency from the CCRB, does intend to release officers' history spreadsheets, which is similar to what was posted on the website, which includes information about exonerated investigations. As for firefighters and the Department of Corrections, neither of those has any, the answer there is fairly no. There's no intent to disclose any, I think the FDNY currently doesn't have a plan in place, they're waiting to see how this case unfolds, and so there is not, and nor is there on the Department of Corrections a plan to release, at this point, allegations from, as I understand it. We'll hear from Ms. Wright, from CPR. Thank you, your honor, and may I please report to Ms. Wright on behalf of CPR. I'd like to start with this question of the CBAs and the unions, and now the cities, contention that their collective bargaining agreements or private agreements are in a position to This cannot be correct, and the opinion in City of Newark versus City of New York establishes two important principles that foreclose these arguments. First, the court held that the city itself has no authority to make agreements that remove certain records from FOIA's reach, and so the arbitrator, which derives their authority from the city's agreement to arbitrate, cannot do so either. And second, the arbitrator's authority, again, stems from an agreement to arbitrate, and so the arbitrator has no power to affect the rights of those who are not parties to the agreement to arbitrate, such as citizens requesting disclosure under FOIA. And so any arbitrator who adopted this interpretation would be exceeding her authority, and that arbitral award would be invalidated as against public policy. Now, the union has argued that the agreements are simply co-extensive with a privacy exception, and here this morning the city has said that it's co-extensive with this exception in the repeal of the CBAs for technical infractions. But, Your Honor, that is inconsistent with New York precedent, specifically the New York Court of Appeals in Washington Post versus New York State Insurance Department held that just as promises of confidentiality or contractual agreements do not affect the status of documents as records, quote, neither do they affect the applicability of any exemption. And so the city and the union simply have no authority to reach private contractual agreements about the applicability of an extension, such as one for technical infractions or private information, or to remove certain records at all from the public's reach under FOIA. This is consistent with background principles about FOIA. Blanket exceptions are inimical to FOIA, and the exemptions are construed very narrowly. And I'd like to address this point about Schedule A being limited to just technical infractions, Your Honor. One of the reasons why it is important and why CPR has sought to get access to these records is because it's not at all clear that Schedule A is limited to technical infractions. The city has released a discipline matrix that defines Schedule A to include things like, for example, minor excessive force, abuse of authority, violations that, in the opinion of the city, is appropriate for Schedule A. And there have been media reports that we cite in our brief that serious infractions are being funneled through Schedule A. And so, one, we can't take the city's word for that Schedule A is just technical infractions because it's undermined by their own discipline matrix. And secondly, even if they were correct about what a technical infraction is, they have no authority. It would be void under public policy if they were to reach an agreement with a private party about what is subject to disclosure under FOIA. And so, in sum, Your Honor, the unions are advancing an improper and illegal interpretation of their contract that is fulfilled by New York law. And they, therefore, have no likelihood of success on the merits of their claims with respect to the CBAs, the settlement agreements, or any other contractual agreements. And, Your Honor, if I might address the union's contentions regarding safety because I want to put on the record that, of course, no one here is downplaying or taking for granted the threats that officers face. But it's important to focus on what the district court found. She did not find that there were not threats to safety. She found that there were not threats to safety that were linked to FOIA disclosures. And so that is key because what the unions have to show before this court in order to obtain injunctive relief is that the injunction would stop the harm that is likely to happen. And if it is not clear that the harm that they're threatening is linked at all to FOIA disclosures, then it is not clear that the injunction will stop it. And more importantly, Your Honor, what we have in this record is 12 jurisdictions where the disclosure rules are similar to what now exists in the wake of the repeal of 50A. And there has not been a single documented threat to an officer as a result of this sort of disclosure, particularly in jurisdictions like Chicago, which the district court found was a fair comparator to New York. Not a single threat, not a single instance of harm befalling an officer. And so on this record, not only have the unions failed to prove that it's likely to happen, but what is undisputed in the record suggests that it is unlikely to occur. And so injunctive relief would be inappropriate. And if I might, Your Honors, before I close up, just say a few words about public interest. Because this is not a long-term interest where transparency is needed at some future time, but it is in fact an urgent need. And the public has a strong interest in immediate access to these records. And there are two points I'd like to make about why this is the case very quickly. One, police violence, as Your Honors know, are real and constantly occurring phenomenon in our community. We are all aware of more cases, Eric Garner, George Floyd, the list goes on and on. But folks in marginalized and minority communities are living with this sort of misconduct and threats from officers and disciplinary infractions on a constant basis. And when it happens, it is important, it is imperative that the community have all available information to allow for an informed debate in the public square and to allow for informed demands for accountability. Your Honors, having a record declaration from the mother of Amadou Diallo, who writes that in the wake of the police officer's killing of her son, she could not get any information about the priors of the officers involved. And meanwhile, every negative thing about her son was in the public square. And so in the aftermath of these events, the debate is often one-sided, unfair, and that is why the public deserves to have to be able to immediately determine the priors of everyone involved, not just the victim. And second, the lack of transparency creates a chilling effect in that it discourages victims from coming forward, particularly when you talk about sensitive forms of misconduct like sexual abuse. We have this in the record from the declaration of Andrea Ritchie. Judge Kearse, do you have any questions? Yes, what did the district court find with respect to the contention that Schedule A is not really limited just to technical infractions and requirements? The district court said in the record that it is unclear exactly what Schedule A covers. And so the district court did not reach a final or a concrete determination as to what is covered. And part of that is because until this matrix was released, and I believe it just went effective on January 15th, that information of what was all of the offenses covered by Schedule A were not available publicly. And so the district court, Your Honor, did not reach a concrete determination about what Schedule A covered. But I will leave it at that, Your Honor. There is not a concrete determination in the record. Thank you. Judge LaValle? No questions. And Ms. Wright, I do have just a brief question. Am I right that the government, the NYPD here, let's say, has the discretion to invoke FOIL exemptions in individual cases? That's correct, Your Honor. There is discretion, permissive discretion. It's not necessary that they can invoke exemptions in certain cases. So they could invoke exemptions across the board, but on an individual basis, is what you're saying? That's correct. Or more accurately, what I'm saying, Your Honor, is that they cannot, by contractual agreement, do it ahead of time. They could theoretically perhaps do it in a regulation that says, as an agency, we are going to treat this sort of record this way. But what you're suggesting is that even though FOIL and presumably other state statutes and regulations allows it on a case-by-case basis to invoke an exemption, it can't, in a broad way, prospectively restrict its exercise of its own discretion. Is that right? That's right, Your Honor. And that comes from the New York Court of Appeals. Where is that? I'd be interested. You mentioned you sent it to Washington Post, but is that the case? That's one case, Your Honor, but I think the better case for Your Honor's question is the New York Court of Appeals decision in gold, which says that blanket exemptions or blanket exceptions are inimical to FOIL, and they are disfavored, and that the exemptions themselves that are laid out by statute are to be construed narrowly. But I think, Your Honor, here, our point is not that the city, as part of an agency, has created a blanket exemption, but our objection is the idea that they can do so in a private agreement. That is void as against public policy and has been squarely rejected by courts in New York, including the highest court of New York, the New York Court of Appeals. Thank you very much. Mr. Coles, you've reserved three minutes. Thank you, Your Honor. First, in response to the city's argument on 7C, I heard the city acknowledge that the CCRB is going to release documents that are inconsistent with our collective bargaining rights of police officers. They can't do that under the collective bargaining agreement. Second, the city tried to argue that the NYPD is not planning to do that, but they are. They're planning to release information before there's been a determination as to whether or not it's been finally exonerated or unfounded. Charges and specifications, which are really a black box with no real evidentiary standard, are not the end of the process. So if we're protected against the release of exonerated allegations, you have to determine whether or not those allegations are going to be exonerated. So I think on both those grounds, those are matters for an arbitrator to decide and argue with us is quite plausible. CPR was wrong on public policy. In the Washington Post case, the Court of Appeals case, specifically applied the FOIL exemptions there and did not overrule the FOIL exemptions. That is also true of the LaRocca case that is in our papers. You can have agreements that are consistent with the FOIL exemptions, and that's what we have over here. On threat of harm, the Empire case completely devastates the argument that you just heard CPR make. This is a dangerous time for police officers. What happened in Chicago or wherever four or five years ago was not relevant to the time today. What's relevant to the times we live in today has been determined by the public division. There is a possibility of endangerment, and that's why a preliminary injunction is necessary. And finally, we haven't dealt with the due process, but our due process claim is a classic due process claim. The Del Monte case is a case directly on point. The city is creating registries designed for the purpose of giving information to, among others, people who will make future liberty-based employment decisions about police officers. And they've done that without any pre-hearing remedy. They've done that on the basis of no articulated standard of evidence and no opportunity to give my officers a hearing before they're placed on this registry. That is going to upset model careers, create lifetime stigmas, and it is going to be enduring. It has irreversible consequences. And finally, just to respond to the balance of equities, there is minimal hardship to the city to allow my officers to have a trial. These documents have been confidential for 40 years. The legislature did not direct the production of disciplinary records. Instead, the disciplinary records will now be treated like everybody else's records, and everybody else's records are protected by collective bargaining rights, by due process rights, by contract rights, and others. It is just a mere inconvenience for the city to wait several months for a trial or arbitration where all these issues can be explored. By contrast, what the city wants to do, release this mass of documents, this is separate from FOIL, not what the legislature anticipated. Mr. Coles, would you just answer, so Ms. Wright referenced the New York Court of Appeals cases, the Washington Post cases and the Gould cases. What is your response to that? Yes, and it's a terrific question, Your Honor, and thank you. The Washington Post case specifically ruled that the exemptions in FOIL can be applied, and if you look at the case, you will actually see that. The Washington Post ultimately determined some of the documents requested could be produced, but those that were subject to exemptions, the parties could agree not to produce. Gould is just a broad case that says that on the whole, you don't have blanket exemptions, but we're not talking about a blanket exemption. We're talking about documents that fall within specific FOIL exemptions because they implicate safety interests or unwarranted invasion of privacy interests. And just the last point on this, because I think you're going to have to wrap up. Yeah, I will. The Committee of Open Government has been designated by the state to advise the city on what is an unwarranted invasion of privacy and what is not. They have ruled after the repeal of 50A that the release of unsubstantiated allegations, unfounded allegations, is an unwarranted invasion of privacy for officers, just the same way it has been for other city employees for years and years. And certainly that can be protected by the collective bargaining agreement. We're entitled to have an arbitration on that. You can't just wash that away. And it also raises significant due process and other questions. So I really thank you, Your Honors, for the opportunity to present on this. Thank you very much to all parties. It has been very helpful. We'll reserve the session and we'll, therefore, hear.